* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Award, but modifies the findings of fact and conclusions of law of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 
In addition to other stipulations contained in the Pre-Trial Agreement which is incorporated herein by reference, the Full Commission finds as fact and concludes as matters of law the following stipulations from the Pre-Trial Agreement:
 STIPULATIONS
1. All parties are properly before the Commission and that the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been corrected designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employee-employer relationship existed between the Plaintiff and Defendant-Employer on October 16, 2001.
4. The parties are subject to, and bound by the provisions of North Carolina Workers' Compensation Act.
5. The workers' compensation insurance carrier is Auto-Owners Insurance Company.
6. As of October 16, 2001, the employee's average weekly wage was $497.37 yielding a weekly workers' compensation rate of $331.60.
7. The plaintiff has been paid temporary total disability from the date of injury to the present.
 * * * * * * * * * * * ISSUES
The issues to be determined are:
1. Was the Plaintiff injured October 16, 2001 during the course and scope of his employment with Defendant-Employer? *Page 3 
2. Is the Plaintiff disabled as provided by N.C. Gen. Stat. § 97-29?
3. Was the Plaintiff's condition from the October 16, 2001 accident aggravated and/or accelerated by the injuries he sustained in the December 2, 2004 auto accident?
4. Are Defendants entitled to a credit of $27,552.80 up to the date of hearing for the overpayment of benefits since MMI was reached March 18, 2003 and for 15 weeks of disability paid based on a 5% impairment rating to the Plaintiff'
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about October 16, 2001, the Plaintiff sustained an admittedly compensable injury by accident arising out of his employment with Dreams Unlimited. At the time, Plaintiff was 39 years of age, and was relatively fit and healthy. Plaintiff was putting up sheetrock, and vinyl on mobile homes. Plaintiff was standing on the tongue of a trailer when he slipped and fell off, striking his left leg and back on a ladder. Plaintiff testified that he also struck his head and briefly lost consciousness; however, the Full Commission could find no medical records from shortly after the accident, which would confirm that he struck his head or lost consciousness.
2. Plaintiff was initially seen at the emergency room at Hugh Chatham Memorial Hospital on the same date of injury. It appears that he complained primarily of pain in his left leg. Plaintiff was told to use ice as needed, and given Ibuprofen. He was taken out of work for three days, with instructions to return to light duty on October 19, 2001 with no ladder climbing or lifting. The medical notes make no mention of a head injury or loss of consciousness.
3. On October 23, 2001, Plaintiff treated again at Hugh Chatham Memorial Hospital. He complained of continued pain in his left leg. There again is no mention of a head injury. The *Page 4 
x-rays demonstrated no convincing evidence of recent fracture or other active, destructive process. A bone scan performed at the same facility on October 29, 2001, indicated that Plaintiff's left leg was normal.
4. On or about October 26, 2001, Plaintiff began treating with Dr. Marvin Vice, as a result of his injury by accident. He initially complained of headaches. Plaintiff told Dr. Vice about his fall, and that afterward he had a lot of pain in his leg, back, and neck area. On November 12, 2001, Plaintiff began complaining of pain in his neck and arms. Dr. Vice believed that an MRI of the cervical spine should be obtained. As of Plaintiff's January 15, 2002 visit, Dr. Vice noted the cervical MRI results were normal.
5. In March 2002, Plaintiff began treating with Dr. Robert Irwin, an Assistant Professor of Neurology at Wake Forest University. Plaintiff reported his fall at work and was complaining of having pain all over, which he told Dr. Irwin was a ten out of ten on a bad day, and three out of ten on his best days. Dr. Irwin found no evidence of abnormalities, subluxations or dislocations in the upper or lower extremities or in the cervical spine. Plaintiff's muscle strength was 5/5 throughout the upper and lower extremities for all muscles.
6. Dr. Irwin ordered an EMG nerve conduction study, and also an MRI of the lumbar spine. The EMG showed no radiculopathy or carpal tunnel syndrome in the upper extremities. The lumbar MRI showed a posterior annular tear at L5-S1 with a small disk protrusion, and somewhat degenerative disk overall. There was no evidence of spinal canal stenosis or neural foraminal stenosis.
7. Dr. Irwin assessed Plaintiff with fibromyalgia. As Dr. Irwin testified, fibromyalgia is characterized by multiple trigger points, and Plaintiff met the criteria upon physical examination. Dr. Irwin also noted that Plaintiff might have cervicalgia as part of a *Page 5 
cervical facet disease or part of the fibromyalgia. Dr. Irwin referred Plaintiff for physical therapy and evaluation by the therapist.
8. On March 21, 2002, Plaintiff stated he was somewhat better and decided to no longer go to physical therapy. When Dr. Irwin saw Plaintiff on April 11, 2002, Plaintiff was in "no apparent distress." Plaintiff had full range of motion (ROM) in the upper and lower extremities. Dr. Irwin's assessment was that Plaintiff did not appear to have discogenic type pain. Dr. Irwin continued to treat Plaintiff and also recommended that Plaintiff see a rheumatologist for his fibromyalgia. Dr. Irwin released Plaintiff to return to light duty work as of April 11, 2002, with maximum lifting of twenty pounds frequently. Dr. Irwin opined that fibromyalgia, while it can be very painful, is not necessarily totally disabling.
9. On July 9, 2002 and July 16, 2002, Plaintiff was complaining of blood in his stool. He was evaluated at the emergency room and it was determined that his condition was caused by hemorrhoids, unrelated to his compensable injury.
10. On November 20, 2002, Plaintiff was examined by rheumatologist, Dr. Robert Wodecki, of the Carolina Arthritis and Spine Center. Dr. Wodecki confirmed the diagnosis of fibromyalgia. While at first Dr. Wodecki's testimony appears equivocal as to whether Plaintiff's fibromyalgia was a result of the accident, when pressed by Attorney Smith near the end of the deposition, Dr. Wodecki's testified that, if Plaintiff was otherwise healthy before the accident, he can, with a reasonable degree of medical certainty, relate the Plaintiff's fibromyalgia, as well as his depression and anxiety, to his fall at work.
11. Dr. Irwin requested that Plaintiff see a psychologist and return to physical therapy. On referral of Dr. Irwin, on May 6, 2002, Plaintiff had a quantitative interdisciplinary evaluation (QIE) and began treatment with Dr. Jeffrey Feldman, a clinical psychologist. In his *Page 6 
assessment, Dr. Feldman noted that Plaintiff perceived himself as being totally disabled; however, in the questions about depression, Plaintiff's score would not put him in the range of "mild mood disturbance."
12. Overall, Dr. Feldman had difficulty assessing Plaintiff since "he presented with such an atypical manner and affect." Dr. Feldman also noted that Plaintiff stated his belief that there were things wrong with his back that had not been diagnosed. Dr. Feldman noted that Plaintiff was a candidate for a Functional Restoration Program. Dr. Feldman also concluded that it would be highly unlikely that Plaintiff would benefit from rehabilitation services until Plaintiff was provided a second opinion on surgery, which Plaintiff was demanding.
13. Dr. Feldman saw Plaintiff on four subsequent occasions. Plaintiff did not progress and continued to complain that he "hurt all over" and that his legs gave out and he needed to use a cane to walk. On February 18, 2003, Dr. Feldman recommended Plaintiff undergo a Functional Capacity Evaluation (FCE) since there was nothing else he could offer to Plaintiff.
14. The opinion of Dr. Wodecki, which is supported by the medical notes of Dr. Feldman, indicates that Plaintiff has some depression. However, it was not so severe as to be a potential for suicide, or even to be measurable on Dr. Feldman's initial evaluation. The Plaintiff has not progressed from the psychological treatment offered by Dr. Feldman.
15. On March 13, 2003, an FCE was performed by Susan Gunn, MPT, who is a certified FCE evaluator. Plaintiff described his pain on a scale of 1 to 10 as being a ten plus and felt his "pain is so bad I think I might die." Plaintiff indicated he needed a cane to get around.
16. As Ms. Gunn observed and testified, Plaintiff gave very poor or sub-maximal effort during his testing on the FCE. Plaintiff exaggerated his disability and gave conscious *Page 7 
effort to demonstrate a greater level of pain and disability than was actually present. This exaggeration was confirmed by the Waddell test where he tested positive on 5 of 5 criteria and the Korbon protocols where he scored 8 out of 21 criteria. The validity criteria showed only 8 out of 27 on the FCE. Therefore, Ms. Gunn concluded that the FCE is the minimum physical activity Plaintiff can do and his actual ability is higher than demonstrated.
17. The Plaintiff's exaggeration of his condition was further confirmed by Ms. Gunn when she observed him in the parking lot, after leaving the test. Plaintiff was not using his cane and she saw him move quickly, without the cane, to avoid a car. Ms. Gunn testified that she also observed that Plaintiff's muscle tone was very well defined in the triceps and biceps, which in her opinion, shows he is using these muscles beyond normal everyday use and his gait and speed were both within normal limits.
18. Dr. Irwin reviewed the recommendations from the psychologist, physical therapists and rheumatologist; and, on March 18, 2003 assessed Plaintiff with a five percent (5%) permanent partial impairment to his neck. Dr. Irwin gave Plaintiff a lifting restriction of 15 pounds occasionally and 8 pounds frequently. In these restrictions, Dr. Irwin indicated the lifting restrictions were based on the FCE, but since the Plaintiff gave sub-maximal effort during the testing, the restrictions given more accurately reflect his minimum lifting abilities instead of his maximum lifting ability. Dr. Irwin could not determine how much more weight Plaintiff could lift, given the Plaintiff's lack of full effort.
19. Video surveillance was obtained by Defendants after Plaintiff told his medical providers he must use a cane to walk. The video surveillance is very brief in duration, but shows Plaintiff walking, leaning down, bending over, getting in and getting out of a car, all without the use of a cane or other assistance. *Page 8 
20. Plaintiff was seen for his complaints of ongoing headaches by Dr. Sandhya Kumar, a neurologist. Dr. Kumar ordered an MRI of Plaintiff's head, which showed no acute intracranial abnormality. Dr. Kumar testified that Plaintiff's headaches could be related to his fall at work, but did not testify that it was probable, or more likely than not, that the headaches were related to the fall.
21. The greater weight of the evidence shows and the Full Commission so finds that Plaintiff does suffer from fibromyalgia, and that prior to his accident at work on October 16, 2001, he was in relatively good health and free of back pain. Considering this evidence overall, and in light of Dr. Wodecki's opinion, the evidence shows that Plaintiff's fibromyalgia is causally related to his accident at work. As a consequence of this fibromyalgia, the Plaintiff is in ongoing pain, although pain being somewhat subjective, the extent of his true pain is difficult to determine, especially given his symptom exaggeration, his sub-maximal performance on the FCE, and his deception as to the need to use a cane for daily walking.
22. At Plaintiff's request, and on the referral of his attorney, Mr. Smith, an independent medical examination (IME) was approved with Dr. Craig Derian, orthopedic specialist. The Commission Order granting this request was filed on July 25, 2003.
23. Dr. Derian saw Plaintiff on November 20, 2003. At that time, Plaintiff reported his fall from the trailer tongue on October 16, 2001 and complained that he "hurts all over" and would be "better off dead." Dr. Derian assessed Plaintiff with symptomatic lumbar disc disease, posterior annular tear, internal disc disruption at L5-S1, fibromyalgia, chronic cervical strain/sprain post injury, and irritable bowel syndrome. It is Dr. Derian's opinion, that Plaintiff should undergo a spinal fusion at L5-S1 and that he will not improve without such surgery. *Page 9 
24. On February 9, 2004, on referral of Dr. Irwin, Plaintiff was examined by Dr. John Peter Birkedal, an orthopedic surgeon, for surgical assessment. Dr. Birkedal examined Plaintiff and found he had a normal gait, and negative straight leg raises (SLR). He did not believe Plaintiff would benefit from surgical intervention.
25. Of all the physicians who have examined Plaintiff, Dr. Derian is the only one recommending surgery. Dr. Irwin does not believe that surgery would benefit Plaintiff and that surgery might make Plaintiff worse. Dr. Birkedal concluded that Plaintiff would not benefit from a surgical fusion. He noted that Plaintiff's fibromyalgia, his chronic headaches, and performance on the FCE, all suggest that he would not have success with a fusion procedure. Dr. Wodecki also does not recommend surgery and is of the opinion that Plaintiff would not respond well and would have terrible results.
26. On March 4, 2004, Plaintiff filed his Form 33 Request for Hearing seeking "treatment and surgery." In the Form 33R Response, Defendants took the position that surgery was not necessary, based upon the recommendations of the other physicians.
27. Upon assessing the evidence, the Full Commission gives more weight to the opinions of the three physicians, Dr. Irwin, Dr. Birkedal, and Dr. Wodecki, over that of Dr. Derian who performed the IME, on whether fusion surgery is reasonably required to effect a cure, provide relief or lessen Plaintiff's disability. The surgical fusion recommended by Dr. Derian is not reasonably necessary and in fact is contra-indicated, given the Plaintiff's fibromyalgia, chronic headaches, his deception as to his true pain level and abilities, and his lack of effort or progress in other therapies.
28. Plaintiff received vocational rehabilitation services, managed by Monica Brooker, beginning in April 2003. Ms. Brooker's testified that Plaintiff has been barely compliant with *Page 10 
vocational rehabilitation efforts, as he puts in 1 to 6 days a month towards obtaining his GED, while the minimum he should do is 2 to 3 days per week. Ms. Brooker also testified that Plaintiff attempts to obtain employment at the same employers over and over again, which is not sufficient to find a job. When applying for work, Plaintiff has told prospective employers that he can only do light duty work.
29. Although Plaintiff was released for return to work by Dr. Irwin, and the evidence indicates that at a minimum per the FCE, on which he gave sub-maximal responses, and per the opinion of Dr. Irwin, Plaintiff could return to work at least at the sedentary to light demand level, Plaintiff has failed to return to work in any capacity. He has not demonstrated true interest in returning to work, and has not diligently pursued either job opportunities or his education (G.E.D.), which could better equip him for other job opportunities.
30. On December 12, 2004, Plaintiff was involved in a motor vehicle accident, while riding in a car, which his father-in-law was driving. At the hearing, Plaintiff testified that at the time of the vehicular accident, he was on his way to a job interview in Erwin, set up for him by Monica Brooker. However, Ms. Brooker's testimony fails to show that she had given him a job lead in Erwin. Their last discussion about a job lead was for a job in Yadkinville. In weighing the evidence, the Full Commission does not find the Plaintiff's testimony credible. Plaintiff was not on his way to a job interview at the time of the accident of December 12, 2004.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 11 
1. On October 16, 2001, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with the Defendant-employer. As a consequence, he sustained injury to his left leg and lower back, including an annular tear, and has developed the condition of fibromyalgia. N.C. Gen. Stat. § 97-2(6); Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
2. As a result of his fibromyalgia, Plaintiff has ongoing pain, the extent of which has been difficult to determine, due to his symptom exaggeration, and lack of compliance with medical treatment such as physical therapy. Defendants are responsible for providing all reasonably necessary medical care related to Plaintiff's injury by accident, including treatment for his fibromyalgia. N.C. Gen. Stat. § 97-2(19); Click v Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
3. Since the Full Commission has given greater weight to the opinions of the three examining physicians who have recommended against a surgical lumbar fusion over the opinions of the one IME physician who recommended the fusion, Plaintiff has failed to prove, by the greater weight of the evidence, that the surgical fusion he has requested is reasonably necessary to effect a cure or to provide relief from his back pain. Therefore, Plaintiff's request for approval of the surgery should be denied. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Plaintiff's claim for compensation due to bloody stools, for which he treated in July of 2002, fails, due to the lack of sufficient evidence from his treating physicians regarding medical causation.Click v Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980).
5. Plaintiff's allegation that his headaches are a compensable consequence of his injury by accident must fail due to the lack of sufficient evidence from his treating physicians regarding medical causation. Click v Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 89 *Page 12 
(1980). Dr. Kumar's testimony establishing a "possible" connection is not sufficient to establish medical causation. Pulley v. City ofDurham, 121 N.C. App. 688, 468 S.E.2d 506 (1996) (expert not competent to testify as to causal relation if based upon mere possibility);Ballenger v. Burris Industries, 66 N.C. App. 556, 311 S.E.2d 881 (1981).
6. As a consequence of his fibromyalgia, Plaintiff developed mild depression. The assessment and treatment rendered by Dr. Feldman was reasonably necessary to assess Plaintiff's psychological state, and Defendants shall be responsible for the same. The evidence fails to establish that Plaintiff would be receptive to, or benefit from further psychological intervention, and therefore Defendants shall not be required to provide any further treatment. N.C. Gen. Stat. §§ 97-2(19),97-25.
7. The Plaintiff has been non-compliant with reasonable vocational rehabilitation efforts. Plaintiff's testimony to the contrary is found to be not credible. Therefore, the Plaintiff shall be ordered to comply with reasonable vocational rehabilitation efforts, and failure to comply with the same may result in suspension of benefits. N.C. Gen. Stat. §§ 97-18.1, 97-25.
8. Plaintiff's claim for compensation for his injuries resulting from the motor vehicle accident of December 2, 2004, fails, as Plaintiff has failed to present convincing and sufficient evidence regarding legal causation surrounding the circumstances of the accident and medical causation related to the injuries. N.C. Gen. Stat. § 97-2(6); Duncan v.City of Charlotte, 234 N.C. 86, 66 S.E.2d 22 (1951).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: *Page 13 
 AWARD
1. Plaintiff's claim for compensation arising out of his compensable injury by accident on or about October 16, 2001 is admitted.
2. The parties stipulated that plaintiff is being paid ongoing benefits for total disability. Defendants shall pay all medical expenses incurred or to be incurred as a consequence of the October 16, 2001 accident, including assessment of Plaintiff's back and ongoing treatment for fibromyalgia.
3. Defendants shall also pay for the medical assessment and treatment previously rendered by Dr. Kumar, for Plaintiff's headaches, as an assessment needed to be made regarding whether the headaches were related to his work-related injury. Defendants are not responsible for ongoing treatment of Plaintiff's headaches.
4. Defendants shall pay for the prior assessment made by and treatment rendered by Dr. Feldman, but are not responsible for ongoing treatment of Plaintiff's mild depression, as Plaintiff has not been receptive to such treatment and has not established by the greater weight of the evidence that he would benefit from further psychological treatment.
5. Plaintiff's request for approval of the lumbar fusion surgery recommended by Dr. Derian is denied. Defendants are not required to provide such surgery.
6. Plaintiff is hereby ordered to comply with reasonable vocational rehabilitation services provided by Defendants. In the event that Plaintiff fails to comply with this Order, the Defendants may file a Motion for suspension of benefits or other appropriate relief.
7. Plaintiff's counsel shall be paid an attorney's fee of twenty-five percent of Plaintiff's ongoing benefits. Every fourth check otherwise due Plaintiff shall be forwarded to his attorney. *Page 14 
This the ___ day of September 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ DANNY L. McDONALD COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1